UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADELINE DEBORA V.G.,[1] | Case No. 1:22-cv-00365-CWD |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of her application for a period of disability and disability insurance benefits. (Dkt. 1.)[3] The matter is fully briefed and at issue. (Dkt. 13, 18, 19.) Having carefully reviewed the parties' memoranda and the entire administrative record ("AR"), the Court will remand the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

[3] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g). As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

**MEMORANDUM DECISION AND ORDER - 1**

**BACKGROUND**

On March 4, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, claiming disability beginning May 9, 2018. (AR 13.) At the time of the alleged disability onset date, Plaintiff was 52 years of age. (AR 26.)

The application was denied initially and on reconsideration, and a telephonic hearing was conducted on July 13, 2021, before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons. (AR 13.) After considering testimony from Plaintiff and vocational expert (VE) Deborah Christensen, the ALJ issued a decision on September 3, 2021, finding Plaintiff had not been under a disability from June 14, 2019,[4] through the date of the decision. (AR 27.)

Plaintiff timely requested review by the Appeals Counsel, which denied her request for review on June 23, 2022. (AR 1-6.) Plaintiff timely appealed this final decision to the Court on August 22, 2022. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold

---

[4] At the hearing, Plaintiff amended the alleged onset date of disability to June 14, 2019. Plaintiff was represented by counsel during the administrative proceedings, and is represented by the same counsel for this appeal. (AR 13.)

**MEMORANDUM DECISION AND ORDER  - 2**

the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[5]

sequential inquiry to determine whether a claimant is disabled within the meaning of the

Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114

(9thCir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity since June 14, 2019. (AR 15.) At step two, the ALJ found Plaintiff had

the following medically determinable, severe impairments: "post-traumatic stress

disorder, social phobia, anxiety disorder, obesity, thyroid cancer, fibromyalgia,

osteoarthritis, cervical degenerative disc disease, and asthma." (AR 15.)

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to Listings 1.15

(Disorders of the skeletal spine); 1.18 (Abnormality of a major joint); 3.03 (Asthma); or

13.09 (Thyroid gland). (AR 16.) The ALJ determined also that Plaintiff's fibromyalgia

did not meet the criteria of various listings. (AR 18.) Finally, the ALJ determined that the

severity of Plaintiff's mental impairments, considered singly and in combination, did not

meet or medically equal the criteria of Listings 12.06 and 12.15. (AR 18.)

---

[5] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER - 4**

At step four, the ALJ concluded Plaintiff retained the residual functional capacity (RFC) to perform light work,[6] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following additional limitations:

> [S]he is limited to walking/standing up to four hours per day. She needs to alternate positions from sitting to standing and standing to sitting every 30 minutes. She is limited to frequent climbing of ramps and stairs, frequent stooping, kneeling, and crouching, occasional crawling, no climbing ladders, ropes, or scaffolds, and frequent bilateral handling and fingering. She can tolerate frequent exposure to vibrations, occasional exposure to pulmonary irritants, and no exposure to hazards. She is limited to unskilled work and would be off task approximately three to five percent of the workday. She can have no public interaction, and occasional coworker and supervisor interaction. She can tolerate occasional changes in work setting. No travel for work can be required.

(AR 20.)

The ALJ determined that, because of Plaintiff's limitations, her ability to perform all or substantially all of the requirements of light work was impeded by additional

---

[6] The Dictionary of Occupational Titles defines light work as follows:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles Appendix C - Components of the Definition Trailer, 1991 WL 688702. Sedentary work involves "sitting most of the time, but may involve walking or standing for brief periods of time." *Id.*

MEMORANDUM DECISION AND ORDER - 5

limitations. (AR 27.) Relying upon testimony from the vocational expert, the ALJ found at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given her age, education, work experience, and RFC, such as: small products assembler and electrical assembler. (AR 27.) The two jobs identified are at the light exertional level. (AR 28.) The ALJ therefore determined that Plaintiff had not been under a disability from June 14, 2019, through the date of the decision. (AR 27.)

## DISCUSSION

The following issues are raised on appeal:

1. Whether the ALJ erred in their evaluation of the medical opinions.

2. Whether the ALJ erred in their evaluation of Plaintiff's subjective symptom testimony.

3. Whether the ALJ erred in their evaluation of the third-party statement of Plaintiff's spouse.

No other issues are raised by Plaintiff on appeal.

## 1.    Medical Opinions

Plaintiff alleges the ALJ erred by failing to properly consider the opinion evidence provided by five medical providers. Drs. Cusack and Vestal rendered opinions upon initial review and reconsideration regarding Plaintiff's physical RFC, while Drs. Stephenson and Dennis rendered opinions upon initial review and reconsideration regarding Plaintiff's mental RFC. (AR 62 – 95.) A third medical opinion from Autumn Keefer, Ph.D., Plaintiff's treating provider, is also in the record concerning Plaintiff's mental RFC.

Because the Court finds the ALJ committed reversible error with respect to the analysis of the opinions of Drs. Cusack and Vestal, which is case dispositive, the Court will not address the other medical opinions.

## A.    Standard of Review

Plaintiff applied for benefits on March 4, 2020. Therefore, the regulations that became effective on March 27, 2017, apply to her claim. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

Under the applicable regulations, the Commissioner is instructed not to "defer or give any specific evidentiary weight…to any medical opinion(s)… including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors for evaluating persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ must "articulate…how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain [her] reasoning and specifically address how [she] considered the supportability and consistency of the opinion, and [her] reasoning must be free from legal error and supported by substantial evidence." *Id*. (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted).

The ALJ needs to address the remaining factors—treatment relationship, specialization, and any other factors—when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). The ALJ may address multiple opinions from a single medical source

in one analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

### B.    Medical Opinions Concerning Plaintiff's Physical Limitations

The non-examining Disability Determination Service (DDS) physicians, Drs. Barry Cusack and Robert Vestal, reviewed Plaintiff's medical file at the initial and reconsideration levels on June 2, 2020, and September 17, 2020, respectively. (AR 61 – 95.) Both physicians concurred that Plaintiff had no manipulative limitations. (AR 67, 71, 85, 89, 90.) In support of their conclusions, they referenced a September 18, 2019 assessment of Plaintiff's hands from the Idaho Elks Rehabilitation Hospital, which documented tenderness in multiple joints of the hands, but no obvious synovitis[7] or dactylitis[8] on exam. (AR 72, 90.)

The ALJ found the opinions persuasive, because the opinions were supported by the physicians' review of the evidence and "consistent with medical records at the hearing level." (AR 24 – 25.) The ALJ explained that the opinions were consistent with medical records noting "mild osteoarthritis…tenderness in joints…[and] no deficits in grip strength." (AR 25.) In support of this conclusion, the ALJ referenced Exhibits 15F at

---

[7] Synovitis is the inflammation of a synovial (joint-lining) membrane, usually painful, particularly on motion, and characterized by swelling, due to effusion (fluid collection) in a synovial sac. HealthCentral – Synovitis (Mar. 30, 2019), https://www.healthcentral.com/condition/synovitis [https://perma.cc/2G7T-467S]

[8] Dactylitis refers to an intense swelling of an entire digit (toe or finger). Lambeth Hochwald, *10 Facts About Dactylitis* (*Sausage Fingers*), HealthCentral (Nov. 19, 2020), https://www.healthcentral.com/slideshow/facts-about-dactylitis-sausage-fingers-psa-symptom [https://perma.cc/UCA2-V4FS]

1-2; 16F at 5; 18F at 27; and 20F at 3. (AR 25, referencing AR 1208-09, 1229, 1305, 1334.)

Turning to the examination notes from September 18, 2019, Plaintiff complained of pain in her hands and thumbs to her provider, Dr. Solich. (AR 454.) Dr. Solich charted that she observed swelling at the base of the thumbs, and that Plaintiff reported her pain was worse with activity and grabbing. (AR 454.) Examination revealed "tenderness in the right 2nd and 3rd DIPs, 3rd PIP, 1st, 3rd, 4th MCPs, left 3rd and 4th DIPs, 2nd and 5th PIPs, 2nd, 3rd, 5th MCPs," as well as tenderness in the "bilateral CMC's, [and] wrists…does not have obvious synovitis or dactylitis on exam." (AR 457.)

Doppler imaging from September 23, 2019, of the right hand revealed the following: "marked abnormality at the first CMC…First CMC: marked capsular thickening and grade 2 power Doppler signal. Osteophytes are exuberant. Second MCP: There is no significant synovial thickening. There is trace effusion. Grade 1 power Doppler signal is noted dorsally." (AR 480.) Also noted was "marked osteophyte formation"[9] at the first CMC. (AR 481.) The radiologist's impression of the right hand was: "Minimal second MCP and dorsal radiocarpal power Doppler signal, with marked

---

[9] "Osteophytes are a sign of advancing joint degeneration in thumb carpometacarpal (CMC) osteoarthritis (OA), appearing radiographically with changes in joint space width and subchondral sclerosis." A.M. Morton et. al., *Osteophyte Growth in Early Thumb Carpometacarpal Osteoarthritis*, Osteoarthritis and Cartilage Vol. 27, Issue 9 (Sept. 2019), https://www.sciencedirect.com/science/article/pii/S1063458419310052  [https://perma.cc/KK3X-3EUK ]

abnormality at the first CMC.[10] Findings are most consistent with osteoarthrosis." (AR 481.) Imaging of the left hand revealed: "osteophyte formation and capsular thickening at the first CMC…First CMC: There is marked osteophyte formation and slight capsular thickening. There is no associated Doppler signal." (AR 481.) The radiologist's impression of the left hand was: "Osteophyte formation and capsular thickening at the first CMC, consistent with osteoarthrosis." (AR 483.)

At the hearing on July 13, 2021, Plaintiff testified that it was hard for her to open her hands, pick things up, grab glasses or hold on to items like a grocery bag. (AR 42.) She testified her thumbs "are really bothering me, they're really painful just to even touch them." *Id.* She no longer was able to cut vegetables or fruit. *Id.* It bothered her hands to grip the steering wheel of a car, so her husband did most of the driving. (AR 47.) In a function report dated May 14, 2020, Plaintiff stated her hands ached every day and were stiff and painful. (AR 285.) She also stated that there were some days her thumbs became so painful she had difficulty moving them. (AR 285.) The vocational expert testified that someone with the RFC outlined above, but who was limited to occasional bilateral handling and fingering, would be precluded from all work. (AR 57 – 58.)

---

[10] Thumb arthritis is common with aging and occurs when cartilage wears away from the ends of the bones that form the joint at the base of your thumb — also known as the carpometacarpal (CMC) joint.
Thumb arthritis can cause severe pain, swelling, and decreased strength and range of motion, making it difficult to do simple tasks, such as turning doorknobs and opening jars. Treatment generally involves a combination of medication and splints. Severe thumb arthritis might require surgery. Thumb Arthritis, Mayo Clinic (June 16, 2022), https://www.mayoclinic.org/diseases-conditions/thumb-arthritis/symptoms-causes/syc-20378339 [ https://perma.cc/YK29-VCXY ]

**MEMORANDUM DECISION AND ORDER - 11**

Despite finding the medical opinions persuasive, the ALJ concluded that the medical evidence of record supported a more restrictive RFC. To account for Plaintiff's hand pain, the ALJ found Plaintiff could engage in "frequent[11] bilateral handling and fingering." (AR 23.) The jobs of small products assembler and electrical assembler require the ability to engage in frequent handling and fingering, and would accommodate the ALJ's assigned limitations on walking, standing, and sitting. (AR 55 – 57.)

Plaintiff argues that the ALJ's RFC concerning Plaintiff's ability to engage in frequent bilateral handling and fingering is not supported by substantial evidence.[12] In her opening brief, Plaintiff contends that the medical opinions concerning Plaintiff's manipulative abilities are neither supported by nor consistent with the medical evidence of record, and that the ALJ therefore erred in finding the opinions persuasive. Pl.'s Brief at 6. (Dkt. 13.) Plaintiff points out that neither physician found Plaintiff had any manipulative limitations, but they did not specifically reference the imaging studies documenting "marked" abnormalities. *Id.* at 7 – 8. Thus, she argues, the ALJ's seeming consideration of Plaintiff's subjective complaints about her manipulative abilities through the ALJ's finding of a greater limitation (frequent, as opposed to no limitation) was in error. Plaintiff explains the alleged error was three-pronged: (1) no medical opinion supported the frequent limitation finding; (2) the ALJ did not explain how they arrived at

---

[11] Frequent means that the activity or condition exists from 1/3 to 2/3 of the time. Dictionary of Occupational Titles Appendix C - Components of the Definition Trailer, 1991 WL 688702. In other words, from 2.66 to 5.33 hours each workday. Occasionally means that the activity or condition exists up to 1/3 of the time. *Id.*

[12] The RFC is the most a claimant can do on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c); SSR 96-8p at *2 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

**MEMORANDUM DECISION AND ORDER - 12**

this finding; and, (3) the ALJ did not acknowledge or explain how the imaging findings supported a limitation to "frequent" handling and fingering. *Id.* at 8 – 9. Put simply, Plaintiff contends that, when the ALJ found her residual functional capacity to be more limited than that found by the physicians from DDS, the ALJ was impermissibly "playing doctor," rendering the RFC unsupported by substantial evidence. Reply at 5. (Dkt. 19.)

Defendant disputes this was the case, because the ALJ is permitted to assess greater limitations based upon testimonial evidence at the hearing. Defendant contends the ALJ explained what evidence supported the determination by citing to medical records documenting Plaintiff's diagnosis of osteoarthritis of the hands, and that the ALJ did not need a specific medical opinion to formulate the RFC.

The Court acknowledges Defendant's argument that, generally, the overinclusion of debilitating factors is considered harmless error. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). It is also true that "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). That determination is made "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), and in doing so the ALJ must "evaluate the persuasiveness of medical opinions," 20 C.F.R. § 404.1520c(a), including by comparison with "the objective medical evidence," 20 C.F.R. § 404.1520c(c)(1) and (2).

It is also true, however, that the ALJ cannot make their own independent medical findings, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006), or reject all the medical opinions and render wholesale a new medical opinion based on raw medical

data, *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). Typical cases of ALJs impermissibly "playing doctor" are when they either reject a doctor's medical conclusion without other evidence, s*ee Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001), or when they draw medical conclusions themselves about a claimant without relying on medical evidence, *see, e.g., Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). The United States Court of Appeals for the Seventh Circuit has noted that "cases in which [they] have reversed because an ALJ impermissibly 'played doctor' are ones in which the ALJ failed to address relevant evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

On the record here, the Court finds Plaintiff's argument persuasive. First, it is not clear that either physician or the ALJ addressed the relevant medical evidence in the record to support their opinions. Both physicians and the ALJ referenced records they claimed documented "mild osteoarthritis." But, these records showed swelling at the base of Plaintiff's thumbs, tenderness of multiple joints in her hands, and "marked abnormality at the first CMC" joint bilaterally, with marked osteophyte formation. There was no explanation from either the non-examining physicians or the ALJ how they arrived at their conclusions that Plaintiff's osteoarthritis was "mild," when the radiology report appears to suggest otherwise. Other than noting the diagnosis of osteoarthritis of the hands, neither the physicians nor the ALJ referenced the radiology report in their analyses or meaningfully explained how they arrived at their conclusions in light of it. (AR 21, 67, 71, 85, 89, 90.)

**MEMORANDUM DECISION AND ORDER  - 14**

Second, the physicians and the ALJ (as well as Defendant) pointed to records documenting "no deficits in grip strength" to support their conclusions. But a review of the referenced records does not support this finding. For instance, on November 18, 2020, Plaintiff had an annual physical examination. Treatment focused on diet, medication management, and preventive care. (AR 1303 – 05.) On March 20, 2021, Plaintiff sought treatment for her diabetes, a condition unrelated to her hand pain. (AR 1208 – 09.) On May 5, 2021, Plaintiff had a well-woman gynecological examination. (AR 1229.) On June 14, 2021, Plaintiff was treated by her psychiatrist. (AR 1334.) No physical examination of Plaintiff's hands was performed at any of these appointments, nor could the Court find a single reference to Plaintiff's grip strength in these records.

Further, even if there were medical records documenting Plaintiff's grip strength, it is not clear to the Court how grip strength, which measures hand strength, relates to grasping and fine manipulative actions, or a person's ability to sustain such actions over the course of a workday or workweek. *See, e.g.,* Mathiowetz, V, Kashman, N, Volland, G, Weber, K, Dowe, M & Rogers, S 1985, 'Grip and pinch strength: Normative data for adults,' *Archives of Physical Medicine and Rehabilitation*, vol. 66, no. 2, pp. 69-74. The ALJ's incorrect reference to grip strength here has affected the analysis of the physician opinions, the subjective symptom analysis, and the RFC, and necessitates remand. *Durham v. Berryhill*, No. 2:17-cv-00385-JVB-JEM, 2019 WL 1375773 *2 (N.D. Ind. 2019) (discussing the lack of correlation between grip strength, and grasping and fine manipulative actions).

Moreover, in finding the physicians' opinions persuasive, but failing to include their precise limitation (i.e., no manipulative limitations) in the RFC, the ALJ essentially rejected the physicians' opinions on this issue. *See Bobbitt v. Colvin*, No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D. Or. Jul. 1, 2014) (ALJ erred by accepting a doctor's opinion without expressly including the doctor's proposed limitation in the RFC). In turn, the ALJ failed to cite to medical evidence explaining her decision not to adopt the limitation on fingering and handling opined by the non-examining physicians, but rather formulated her own limitation to accommodate Plaintiff's statements at the hearing, which she claimed to have credited. In this sense, the ALJ was, to some extent, playing doctor by substituting their own judgment without reference to the radiologist's report.

Based upon the above, it is not clear to the Court that the ALJ adequately fulfilled the duty to determine whether the physicians' opinions were supported by medical findings. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The Court therefore finds the ALJ failed to meaningfully address, on this record, the two key factors identified in the 2017 regulations: consistency and supportability. 20 C.F.R. § 404.1520c(b)(2). In sum, the Court concludes that the ALJ's finding that Dr. Cusack's and Dr. Vestal's opinions were persuasive is not supported by substantial evidence.[13]

The ALJ's decision must demonstrate the path of reasoning, and the evidence must lead logically to the conclusion *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). The Court cannot uphold the ALJ's decision if the reasons given do not build

---

[13] The Court's conclusion is limited to the issue of Plaintiff's manipulative abilities.

**MEMORANDUM DECISION AND ORDER - 16**

an accurate and logical bridge between the evidence and the result. *Belle on behalf of J.S.*
*v. Saul*, No. 2:19-CV-00077-JAD-EJY, 2021 WL 5513527, at *5 (D. Nev. Nov. 5, 2021),
*report and recommendation adopted*, No. 2:19-CV-0077-JAD-EJY, 2021 WL 5510222
(D. Nev. Nov. 24, 2021). The fact that important evidence was not mentioned, and other
cited evidence bears no relationship to the ability to handle and finger, leaves the Court
unable to discern how the ALJ arrived at the RFC. The Court is therefore unable to
uphold the ALJ's finding concerning Plaintiff's ability to frequently handle and finger
bilaterally.

The only evidence concerning Plaintiff's ability to manipulate objects came from
her testimony, which the Court turns to next.

## 2.    Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by rejecting her subjective symptom testimony.
Defendant contends that the ALJ reasonably discounted Plaintiff's subjective complaints
as inconsistent with the evidence. Defendant points out that the ALJ contrasted Plaintiff's
subjective complaints with objective medical evidence demonstrating Plaintiff was more
functional than she alleged, noted mild symptoms and normal examinations, and
explained how Plaintiff's subjective complaints were inconsistent with reported activities.
Def.'s Brief at 5 – 6. (Dkt. 18.) Defendant also pointed out the ALJ characterized
Plaintiff's treatment as conservative. *Id.* at 8.

### A.    *Legal Standard*

Where, as here, the ALJ "determines that a plaintiff for Social Security benefits is
not malingering and has provided objective medical evidence of an underlying

impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015)). *See also Smartt v. Kijakazi*, 53, F.4th 489, 494 (9th Cir. 2022) (articulating the clear and convincing standard). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and…explain what evidence undermines that testimony.'" *Id.* (alterations in original) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

### B.   *Analysis*

In her written function report, Plaintiff stated that her hands ached every day and were stiff and painful, such that she had difficulty grasping, picking up and removing lids, typing, writing, and handling zippers and buttons. (AR 285.) Some days her thumbs were so painful she had trouble moving them. (AR 285.) Plaintiff described doing activities, such as caring for horses, chickens and dogs, punctuated by long periods of rest throughout the day. (AR 284 – 85.) The statements in the function report were consistent with Plaintiff's testimony at the hearing. Plaintiff explained that she no longer practiced yoga because it bothered her hands and shoulder. (AR 44 – 45.)

The ALJ summarized Plaintiff's symptom testimony, which included Plaintiff's reports of arthritis in her hands; difficulty gripping; pain in her shoulder and hands while driving; general aches and pains; fibromyalgia symptoms; and mental health symptoms. (AR 20.) But the ALJ concluded that Plaintiff's statements about the intensity,

**MEMORANDUM DECISION AND ORDER  - 18**

persistence, and limiting effects of these symptoms were not fully substantiated by the medical evidence of record. (AR 20 – 24.) The ALJ discounted Plaintiff's subjective symptom testimony and self-reported physical limitations because the objective medical evidence was inconsistent with her reported limitations; she demonstrated a good response to conservative treatment; and, Plaintiff's daily activities were inconsistent with her self-reported degree of limitation. Nonetheless, the ALJ gave Plaintiff the "benefit of the doubt," so to speak, concerning her hand osteoarthritis, assigning a greater limitation than did Drs. Cusack and Vestal, who opined she did not have any manipulative limitations at all.

While all of these reasons may be good reasons, the Court finds they are not specific, clear, and convincing reasons in this case when looking specifically at Plaintiff's bilateral manipulative abilities.

First, the ALJ reasoned that treatment notes reflected Plaintiff's symptoms were not as severe as she alleged. The ALJ noted that medical records reflected full range of motion of all joints, good strength, normal sensation, normal reflexes, and that she responded well to physical therapy. (AR 21 – 22.) The ALJ further noted that Plaintiff generally complained of mild pain in January and February of 2020, and that Plaintiff reported improvement in her pain with walking her horse. (AR 22.) Finally, the ALJ cited to several medical records which consistently noted a normal gait; some pain upon palpitation but no persistent deficits in strength, grip strength, or range of motion; and

low levels of reported pain. (AR 23.)[14] Contraindication with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008).

But, the records cited by the ALJ make no mention of Plaintiff's hand arthritis, or her bilateral handling and fingering ability. The only evidence in the record concerning Plaintiff's manipulative abilities was her testimony and the medical records from September of 2019. Plaintiff described pain in her thumbs which made it difficult to move them, and that her hands ached every day. (AR 285.) The objective medical evidence from September 18, and 23, 2019, supporting Plaintiff's claimed limitations noted "marked" abnormalities. (AR 454, 457, 480 – 83.) In other words, none of the objective medical evidence referenced by the ALJ undermined Plaintiff's testimony about the severity of her hand pain and her difficulty with bilateral handling and fingering. *See Treichler v. Comm'r*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The ALJ pointed out that Plaintiff generally received conservative treatment, consisting of physical therapy and medication. (AR 23.) For instance, the ALJ cited evidence in the record that Plaintiff reported a good response to treatment with meloxicam and nortriptyline to control symptoms. (AR 21.) *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling…."). The ALJ also noted that Plaintiff reported

---

[14] The ALJ cited the following exhibits: Exs. 4F at 11, 17; 5F at 6, 12; 8F at 48, 66, 77, 84, 116, 182, 264-265; 10F at 5; 15F at 1-2; 16F at 5; 18F at 27; and 20F at 3. The Court found no reference to grip strength in any of these records. (AR 412, 418, 452, 458, 784, 802, 813, 820, 852, 918, 1000 – 01, 1099, 1208, 1305, 1332.) Rather, the bulk of these records discussed treatment of Plaintiff's fibromyalgia pain, low back pain, and cervical pain.

**MEMORANDUM DECISION AND ORDER  - 20**

improvement in pain with activity, such as walking her horse. (AR 22.) And, the ALJ noted that in September of 2022, Plaintiff reported good progress with physical therapy. (AR 22.) *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Again, however, none of these records involved treatment for Plaintiff's hand osteoarthritis. There is no quantitative evidence concerning Plaintiff's use of her hands to walk her horse. In other words, the evidence cited by the ALJ does not specifically relate to Plaintiff's hand osteoarthritis, and therefore does not undermine her testimony concerning the difficulty she has using her hands.

Last, the ALJ identified contradictions in Plaintiff's testimony regarding her daily activities and the activities she reported to her treating providers. Although the ALJ highlighted several inconsistencies between Plaintiff's subjective symptom testimony and statements she made to treatment providers, none of these inconsistencies related to her ability to sustain the demands of frequent fingering and handling over the course of an eight hour workday and forty hour work week. For example, the ALJ noted that, in November of 2019, she reported walking her horse up to one mile each day. (AR 22.) On January 9, 2020, she reported 2/10 pain to her chiropractor, who was treating her for low back pain. (AR 22, 820.) In this same January 9, 2020 treatment note, Plaintiff reported walking about four miles each day, and that her pain was worsened by physical activities such as yoga, yard work, and riding her horse. (AR 820.) On February 26, 2020, the ALJ noted that Plaintiff continued to report exercising daily with yoga and walking her horse. (AR 22, 449.) Later, on September 23, 2020, the ALJ noted Plaintiff reported good

progress with physical therapy related to her neck and upper back pain, and that she was able to move hay bales. (AR 22, 1312.) This same September 23, 2020 treatment note documented that Plaintiff was able to do "all ADL's[15] without pain or symptoms in her neck and shoulders." (AR 1312.)

Consistent with the ALJ's conclusion, these alleged contradictions suggest a greater level of functioning than what Plaintiff reported concerning her ability to walk, stand, sit, and persist during an eight hour day. (AR 23.) *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (When evidence in the record is inconsistent with a claimant's subjective testimony, the ALJ may weigh it as undercutting such testimony.) But, these functional activities do not shed much light, if any, on Plaintiff's ability to sustain the demands of frequent handling and fingering over the course of a workday or work week. *See* SSR 96-8p. (The ability to work includes the ability to do sustained work activities on a regular and continuing basis). While some activities, such as ADL's, yoga, yard work, and caring for pets more than likely required the use of her hands, the ALJ did not specifically comment upon these activities to discredit Plaintiff's testimony about limitations due to her hand osteoarthritis.

Accordingly, the Court finds the ALJ did not adequately support her findings and conclusions regarding Plaintiff's handling and fingering ability, and did not cite specific, clear and convincing examples following the amended disability onset date contrasting

---

[15] ADLs is shorthand for "activities of daily living," and include such activities as ambulating, grooming, toileting, dressing, and eating. Roma Kunde, *What Are Activities of Daily Living (ADLs)?*, WebMD (Oct. 4, 2022), https://www.webmd.com/a-to-z-guides/what-are-activities-of-daily-living [https://perma.cc/L54K-NHC5 ]

Plaintiff's symptom testimony with objective evidence in the record that undercut such testimony. The Court therefore finds the ALJ's reasons for discounting Plaintiff's testimony concerning the severity and limiting effects of her hand pain are not supported by substantial evidence in the record.

Because the Court concludes that this matter must be reversed and remanded for further evaluation of the medical evidence and Plaintiff's symptom testimony as it concerns her fingering and manipulative abilities, the Court will not discuss Plaintiff's other assignments of error. On remand, the ALJ must consider the evidence in the record related to Plaintiff's fingering and manipulative abilities in determining the RFC. She must also evaluate Plaintiff's ability to do sustained work activity with her hands bilaterally on a regular and continuing basis. SSR 96-8p.

## CONCLUSION

As explained above, the ALJ's decision will be reversed and remanded. In this case, the record does not conclusively demonstrate that Plaintiff is disabled. Further, the primary basis for reversal is the failure of the ALJ to consider certain evidence and to evaluate Plaintiff's symptom testimony related to her bilateral handling and fingering ability. The appropriate remedy, therefore, is remand for further proceedings.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1)      The decision of the Commissioner of Social Security is REVERSED.

2)      This action shall be REMANDED to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **November 09, 2023**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 24**